# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

NEWAY CAPITAL LLC,
  *Appellant.*

v.                                            No. 25-7206

BAPA HOLDINGS, CORP.,
  *Appellee,*

_____

**BAPA HOLDINGS, CORP.'S RESPONSE IN OPPOSITION
TO NEWAY'S MOTION TO STAY PROCEEDINGS PENDING APPEAL**

i

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................1

PROCEDURAL AND FACTUAL HISTORY ...............................2

ARGUMENT..............................................................................8

   I. Standard of Review...........................................................8

   II. NeWay will not succeed on the merits..............................9

     A. The District Court correctly found that NeWay is
     "found within" the district. .......................................9

     B. Ex parte § 1782 applications do not offend due process. ..................14

     C. NeWay does not have a due process right to copies of the pleadings
     in the foreign proceedings ......................................15

   III. NeWay will not be irreparably harmed in the absence of a stay .........16

     A. Irreparable harm must be established by competent evidence ..........17

     B. A confidentiality agreement would prevent any potential harm. ......17

     C. NeWay's "harms" are so generalized as to apply to any non-party ..18

   IV A stay is likely to irreparably harm BAPA...........................................19

   V. The public interest disfavors stays of discovery orders
   pending appeal...........................................................21

   VI. If the Court imposes a stay, a bond of $7,000,000 is appropriate .......21

CONCLUSION ...........................................................22

ii

## **INTRODUCTION**

A stay pending appeal is an extraordinary remedy to which NeWay is not entitled.

*First*, NeWay is not going to win on appeal. Its underlying motion presented legally unsupported challenges to well-accepted 28 U.S.C. § 1782 jurisprudence and a half-baked challenge to personal jurisdiction that suggested it lacked any principal place of business. On appeal, its jurisdictional arguments rely entirely on the legal arguments and evidence first submitted on reply, which the district court correctly identified as an attempt at sandbagging and jurisdictional manipulation. The other branch of its appeal quixotically asserts that § 1782 proceedings violate due process if not accompanied by a full copy of the foreign proceedings, a position inconsistent with the Supreme Court's instruction that § 1782 allows discovery of unpleaded claims.

*Second*, NeWay has failed to establish irreparable harm. Doing so requires an evidentiary showing, not just conclusory assertions in a brief, and NeWay's generalized concerns about burden could apply to any third-party discovery. Generalized concerns about the exposure of confidential information are insufficient in the face of less intrusive alternatives. NeWay's failure on this point alone precludes a stay.

*Third*, BAPA is at risk of substantial prejudice from a stay. NeWay

1

projected a delay of 12-16 months, which would more than double the length of the § 1782 proceeding. The foreign proceeding has been underway for more than three years, and the parties are awaiting a decision that would close the window for evidentiary supplementation—potentially mooting the § 1782 discovery and prejudicing BAPA.

*Fourth*, public policy disfavors stays of § 1782 proceedings. Congress enacted § 1782 as a means of providing efficient judicial assistance in support of foreign litigation. A stay that threatens to moot the § 1782 proceeding runs afoul of that congressional purpose.

All four factors oppose a stay, and this Court should deny the motion, just as the District Court did.

## PROCEDURAL AND FACTUAL HISTORY

The § 1782 proceeding underlying this appeal has its roots in a 2014 joint venture for a residential development (the "Project") in Honduras, under which BAPA was to provide a $7,000,000 capital contribution. Appellant's Renewed Mot. for Stay Pending Appeal ("Motion"), Ex. I ("First Callejas Declaration"), ¶¶ 9, 12-15. Banco Agromercantil de Guatemala, Sociedad Anónima ("BAM") had already provided a $6,000,000 loan for the Project. *Id*. ¶¶ 10-11.

About two years later, after BAPA had made the agreed capital contributions and the project was underway, BAPA discovered problems relating to BAM's

2

involvement in the Project. *Id*. ¶¶ 15-19.

In 2017, BAPA and BAM entered into an agreement in which BAM would sell the Project and divide the sales proceeds between BAPA, BAM, and other interested parties. *Id*. ¶ 20. The sale agreement required BAM to assume any liability for the sale of the Project and to keep BAPA informed of its efforts to sell and the actual sale of the Project. *Id*. This process was stalled by the involvement of another creditor, but in February 2020, BAM informed BAPA that it had hired Broadspan Capital LLC ("Broadspan") to help sell the Project. *Id*. In May 2021, after multiple requests for information from BAPA, BAM stated that it had sold and assigned the credit rights that guaranteed the Project, but refused to disclose any other information. *Id*. ¶ 21.

In December 2021, BAPA began an evidence-gathering proceeding in Guatemala in anticipation of litigation against BAM. *Id*. ¶¶ 28, 29. In support, BAPA also filed a § 1782 application for judicial assistance in the Southern District of Florida, seeking information from Broadspan. *Id*. ¶ 22.

On September 14, 2022, BAPA filed a civil action for breach of contract against BAM (the "Foreign Proceeding") in the Eighth Civil Court of First Instance in Guatemala (the "Guatemalan Court") using evidence obtained through the Broadspan § 1782. *Id*. ¶¶ 30-32. BAPA has updated and amended its pleadings as it received new evidence through the Broadspan § 1782, and that evidence has

3

been accepted by the Guatemalan Court. *Id*. ¶¶ 32-33.

Discovery obtained in the Broadspan § 1782 showed that the Project was sold in a transaction that involved multiple entities related to NeWay Capital LLC, including a Honduran subsidiary, Honduras Próspera, Inc. *Id*. ¶¶ 22-25. NeWay is incorporated in Wyoming, and both its website and its Annual Reports with the Wyoming Secretary of State provide a District of Columbia address for NeWay.

Relying on that information, and an absence of public information locating NeWay in any other jurisdiction, BAPA concluded that NeWay could be found within the District of Columbia, initiating this § 1782 proceeding. Ex. A. The Court granted the application on May 21, 2025 (Ex. D), after requesting and receiving briefing on the propriety of an *ex parte* § 1782 application.

On June 9, 2025, NeWay filed a motion to vacate the order granting the application. Motion, Ex. L. NeWay argued, in relevant part, that: (1) due process requires vacating the *ex parte* order (*id*. at 3-4); (2) the application was insufficient because it did not contain Guatemalan pleadings (*id*. at 6); and (3) the District Court lacked personal jurisdiction over NeWay (*id*. at 4). In the attached declaration, NeWay's counsel characterized the Washington D.C. Office that it identifies as its headquarters as a "virtual office," (Ex. B ¶ 4) asserting that it has not "designated Washington D.C. for general jurisdiction purposes" (Motion, Ex. L at 2), that it was a "remote-work company" (Ex. B ¶ 2) and that "no personnel,

4

management, or board members" reside "or otherwise regularly do business" in D.C. (Motion, Ex. L). It did not clearly identify any jurisdiction as its principal place of business, claiming "to the extent it has a physical operational location at all" it would be in Mississippi, "where a board member and a chief of staff live." (Ex. B ¶ 3). It provided a Mississippi address as "licensed for annual board meetings" "to the extent they are physical and not organized elsewhere." *Id.* The motion did not otherwise identify where NeWay's executives worked or were located.

BAPA's response noted that § 1782 actions extended to the limits of due process, rather than being constrained strictly to general jurisdiction. BAPA also noted the complete lack of support for NeWay's proposal that virtual companies are subject to general jurisdiction nowhere, and outlined why NeWay would "reside" within the District of Columbia under principles of both general and specific personal jurisdiction. It attached evidence undermining NeWay's representations, including:

- NeWay's website identifies D.C. as its sole location and provides a D.C. address and phone number. Ex. E ¶ 3; Ex. G.
- NeWay's social media has "Washington, D.C." as its headquarters. *Id*.
- NeWay's website provided a list of six executive officers (Ex. E ¶ 5; Ex. H), whose social media pages indicated that they worked or were located in D.C., including:

5

- o NeWay's executive officer and CEO, whose Linkedin placed NeWay in D.C. and himself in the "Washington D.C. metro area" Ex. J.

- o An officer and advisory board member identifying his current location as in D.C. Ex. L.

- o The person listed as NeWay's COO maintained a public profile indicating he was operating in D.C. until May 2021, encompassing the times relevant to the discovery sought. Ex. K.

- Neither the board member nor Chief of Staff described by NeWay were listed as NeWay executives; the chief of staff appeared to work for a NeWay subsidiary instead. Ex. Ex. N.

- The Mississippi address NeWay proposed as its physical location was a personal residence belonging to the non-executive board member and his wife. Ex. E ¶ 13; Ex. P.

- NeWay's Annual Reports from 2018 to 2025, signed by NeWay officers, specified Washington D.C. as NeWay's principal office. Ex. E ¶¶ 19-21.

- SEC forms signed by NeWay's CEO placed him at NeWay's D.C. address, identifying it as the "principal place of business." Ex. E ¶¶ 14-17.

NeWay's reply attached and relied upon seven new declarations to argue, for the first time, that its "nerve center" was not located in D.C., contesting the accuracy of the information on its own website and attached to BAPA's response. *See generally* Motion, Ex. K. It did not identify an alternative principal place of business. Cursory affidavits from NeWay's CEO and executive director asserted that they reside in Maryland and do not "continuously" work in D.C., but did not provide any other place of work in the U.S. *Id.*, Ex. H. Another cursory affidavit asserted that the person identified as COO on NeWay's website had left the

6

company without disputing that he worked in D.C. during his tenure. *Id.*, Ex. G. An affidavit from the "chief of staff" indicated that he sometimes traveled to D.C. for work. *Id.*, Ex. D. And another affidavit indicates that to the extent records were stored physically anywhere, they would be stored in D.C., describing D.C. as "the only central physical point of contact for business communications with the entire executive team." *Id.*, Ex. C.

BAPA moved the Court to ignore the new evidence and arguments submitted for the first time on reply or for leave to file a sur-reply. Ex. AC. It was denied as moot when the Court denied NeWay's motion to vacate. Motion, Ex. B.

NeWay filed this appeal and then moved to stay pending appeal. Ex. W. The district court denied that motion, finding against NeWay on each of the four factors. Motion, Ex. A. It found NeWay was unlikely to succeed on appeal since NeWay's own public representations, official filings, and executive operations reflected a principal place of business in D.C. and its contrary evidence was unpersuasive, appeared to be an attempt to manipulate personal jurisdiction, and was first submitted on reply. *Id.* at 8-12. It also rejected NeWay's claim of irreparable harm as generalized to the point of applying to every third-party subpoena, held that BAPA had provided evidence of an injury due to the risk of mootness, and that a stay would be against the core purposes of § 1782. *Id.* at 13-14.

7

## **ARGUMENT**

A stay should not issue in this case. NeWay's proposed arguments on appeal would rely on a misreading of applicable caselaw and on evidence that was first submitted on reply and does not refute BAPA's evidentiary showing. This precludes a stay. NeWay has not made any showing of irreparable harm, only speculative, mitigatable concerns about the disclosure of confidential information, also precluding a stay. BAPA, by contrast, risks real and serious prejudice to its case due to a pending ruling that would close the period for evidentiary supplementation, mooting this § 1782 proceeding. Under the circumstances, public policy does not support a stay.

## I.    **Standard of Review**

"A stay pending appeal is an extraordinary remedy." *KalshiEx LLC v. CFTC*, 119 F.4th 58, 63 (2024). "[B]ecause the burden of meeting the standard is a heavy one, more commonly stay [pending appeal] requests will be found not to meet this standard and will be denied." WRIGHT & MILLER, 11 FED. PRAC. & PROC. CIV. § 2904 (3d ed.). The Court considers four factors: (1) whether NeWay has made a strong showing that it will likely succeed on the merits of its appeal; (2) whether NeWay will suffer irreparable harm absent a stay; (3) whether a stay will substantially injure other parties; and (4) whether a stay is in the public interest. *Nken v. Holder*, 556 U.S. 418, 433 (2009). The first two factors are "the

8

most critical," *Id*. and "the party requesting a stay bears the burden." *Id*. at 433-34. (citations omitted).

## II.   NeWay will not succeed on the merits.

The first factor, a "strong showing of likelihood of success on the merits," "requires more than a mere possibility," but a serious, substantial, difficult legal issue. *Nken*, 556 U.S. at 433-34; *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 843, (D.C. Cir. 1977). None of NeWay's proposed grounds for appeal have merit or require addressing such an issue.

### A. The District Court correctly found that NeWay is "found within" the district.

NeWay primarily challenges the District Court's conclusion that NeWay is "found within" the district and subject to personal jurisdiction here. In making this argument, NeWay asserts that the District Court failed to apply the "nerve center" test for general personal jurisdiction, misunderstood the meaning of the Wyoming Secretary of State registrations, and failed to consider the evidence that NeWay attached to its reply. None of these arguments is likely to prevail on appeal.

#### 1. *The District Court applied the correct standard.*

NeWay argues that the District Court failed to apply the "nerve center" test for general jurisdiction—and thus came to an incorrect conclusion as to NeWay's presence within the District of Columbia. This argument fails.

Section 1782 requires that a respondent "reside" or be "found within" the

9

district. "Common principles of personal jurisdiction inform this analysis" and "overlap considerably" with it. *In re Mussington*, 708 F.Supp.3d 1, 13 (D.D.C. 2023) (cleaned up). This requirement extends to the bounds of personal jurisdiction, not just general jurisdiction, and a respondent may even be "found" within a district if they are served with a subpoena while physically present. *In re del Valle Ruiz*, 939 F.3d 520, 527-28 (2d Cir. 2019) (noting that § 1782 was amended to permit depositions regardless of whether the deponent is "residing in the district or only sojourning there") (citation modified). And exercising personal jurisdiction over an entity headquartered within a state does not offend due process, especially under § 1782, which "is simply a discovery mechanism and does not subject a person to liability." *Id*. at 532.

NeWay's caselaw does not stand for a contrary position. *Hertz Corp. v. Friend*, 559 U.S. 77, 137-39 (2010) adopted the "nerve center" test for diversity jurisdiction (not personal) to prevent entities from manipulating federal jurisdiction "by filing [their] incorporation papers" elsewhere from their primary place of business. *Hertz* rejected the sort of jurisdictional manipulation that NeWay is attempting to engage in. And *Daimler AG v. Bauman*, 571 U.S. 117 (2014), applied an "at home" test, leaving in place the principal that a corporation may be subject to general jurisdiction where it is incorporated or headquartered. *Id*. at 157 ("The majority does not dispute that a State can exercise general jurisdiction where

10

a corporate defendant has its corporate headquarters, and hence its principal place of business within the State.") (Sotomayor, concurring); *see also BNSF Ry. v. Tyrrell*, 581 U.S. 402, 407 (2017) (discussing place of incorporation and headquarters). *Erwin-Simpson v. Berhad*, 985 F.3d 883 (D.C. Cir. 2021) adopted *Daimler*'s "at home" test (not a nerve-center test) to conclude that doing business in a state <u>through</u> a website was insufficient to establish jurisdiction over that entity. The same is true of *Monkton Insurance Services v. Ritter*, 768 F.3d 429 (5th Cir. 2014). Neither stands for the proposition that information on a corporation's website—such as its address or board members—cannot be considered by the court. And *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 (2d Cir. 2016) rejected the idea that and having a registered agent in a state sufficed for general personal jurisdiction, without addressing *Hertz*.

> 2. *The evidence shows that NeWay is "found within" D.C. and subject to personal jurisdiction there.*

NeWay is subject to personal jurisdiction in D.C. under any of the above standards regardless.

NeWay holds itself out as located in D.C., maintains a D.C. address and phone number, and its *only* physical office is located in D.C., which it uses for record-keeping. *See generally* Ex. E. NeWay and its officers "characteri[zed] its business as based in Washington DC" by listing the D.C. office as its

"headquarters" and its "principal place of business" online, in annual reports, and in SEC filings. *In re Pishevar*, No. 21-mc-105, 2023 U.S. Dist. LEXIS 27894, at *5 (D.D.C. Feb. 17, 2023) (granting application). NeWay's arguments that this evidence should be disregarded are meritless. The district court did not err by considering NeWay's own representations.

The executive team listed on NeWay's website work or have worked in D.C. (Ex. E ¶¶ 5-11) NeWay's CEO resides in Maryland, near D.C., and D.C. is the only place that he has identified as doing any work within the United States,[1] as has NeWay's executive director; he signed SEC filings indicated he worked from the D.C. office. Ex. E ¶¶ 14-17. NeWay's (former) COO worked in D.C. during the times relevant to the discovery sought up until he left NeWay. And NeWay's "Chief of Staff" admittedly travels to D.C. for work on request. Motion, Ex. D ¶ 3. At the very least, a plurality of officers appear to work or have worked there.

Tellingly, NeWay proposed no location with a greater concentration of executive decisions—no greater nerve center—and no other principal place of business to the district court. Motion, Ex. A at 9. It asserts that D.C. is not where

---

[1] NeWay asserts this work was lobbying and cannot be considered for jurisdictional reasons, but first presented this argument in an opposition to a motion for leave to file a sur-reply, not in its motion or its reply. Motion, Ex. M. This argument is not preserved for appeal. *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 616 F.3d 568 at 575 (2010). It is meritless besides: the rule is against where the "sole" contact is with a federal instrumentality in D.C., *United States v. Ferrara*, 54 F.3d 825, 831 (1995), not the wealth of contacts here.

12

operations are directed—but never provides a better alternative. *Id.* Instead, according to NeWay, the D.C. office is "the only central physical point of contact for business communications with the entire executive team." *Id*. That sounds like a nerve center or principal place of business and should be construed as such.

### 3. NeWay's appeal relies on evidence and argument presented for the first time on reply.

One last point: NeWay's initial motion before the District Court relied entirely on a short declaration by NeWay's counsel. Its arguments on appeal rely instead on new arguments and new evidence that it submitted for the first time on reply—the Motion to Stay does not rely on that declaration and omits it from the Exhibit Appendix.

When presented with new evidence raised for the first time on reply, a district court must "either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply." *Baloch v. Norton*, 517 F.Supp.2d 345, 349 (D.D.C. 2007); *see also* MBI Grp., 616 F.3d at 575 (declining to consider evidence first presented to the district court on reply). As the district court noted, it had no obligation to consider the new evidence or arguments at all. *Id*. at 7. Indeed, any decision in NeWay's favor could not rely on the new evidence, absent a sur-reply—which NeWay opposed. Motion, Ex. M.

## B. *Ex parte* § 1782 applications do not offend due process.

NeWay argues that the *ex parte* nature of the proceedings violated due process, and allowing BAPA to submit jurisdictional evidence in response to the motion to quash furthered that violation.

As the District Court noted, it is well established that district courts "may review [and grant] a 1782 application on an ex parte basis." *In re Masters*, 315 F.Supp.3d 269, 272 (D.D.C. 2018); *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte"); *see also ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 624 (2022) (noting, without concern, that underlying application was granted *ex parte*). This is because the respondent will be able to substantively respond with a motion to quash once the subpoena is served. *Gushlak*, 486 Fed. App'x at 217.

That is exactly what occurred here. NeWay received notice of the subpoena, filed a motion to vacate and quash, and submitted evidence in support of that motion. BAPA submitted a response with its own evidence in support, in accordance with normal procedural expectations. NeWay filed a reply. The parties obtained a reasoned written decision addressing their arguments on the merits. Due process requires notice and an opportunity to be heard, which NeWay received. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). NeWay cites

14

no authority holding that the *ex parte* initiation of a § 1782 proceeding is improper, either as a general rule or one dependent on "sophisticated" investigating. NeWay's argument to the contrary misunderstands *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.* Nothing in that case indicates that the initial *ex parte* order was improper—just the subsequent refusal "to consider appellants' arguments and evidence challenging whether the appellees satisfied the statutory criteria and the *Intel* factors to obtain § 1782(a) discovery." 55 F.4th 469, 476 (5th Cir. 2022).

NeWay also suggests that BAPA should not have been permitted to provide jurisdictional evidence in responding to the motion to quash. NeWay did not object to that evidence at the time, forfeiting this argument. *MBI*, 616 F.3d at 575. Parties are permitted to present evidence in response to a motion; it is doing so for the first time on *reply*, as NeWay has done, that is a problem. *Id*. NeWay's thwarted desire to have the last word, despite the practices of this Circuit (*see id.*), is not a due process violation.

## C. NeWay does not have a due process right to copies of the pleadings in the foreign proceedings.

Imposing a requirement that pleadings be filed or attached improperly narrows § 1782, which contains no such restriction. NeWay will not succeed with this argument on appeal. Such a restriction would be inconsistent with the Supreme Court's holding that discovery may be sought for use in a foreign proceeding

15

merely within "reasonable contemplation," in which case there would be no pleadings at all. *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 259 (2004).

Instead, § 1782 statutory requirements and *Intel* factors can be satisfied by an affidavit or declaration by the applicant or foreign counsel describing the contemplated or pending foreign legal proceeding. Courts consistently grant § 1782 applications supported by such declarations, and that is exactly what BAPA provided. *See, e.g.*, *Ht S.R.L. v. Velasco*, 125 F.Supp.3d 211, 225 (D.D.C. 2015) ("Petitioner relies on the declaration of Petitioner's Italian counsel…"); *In re Kuwait*, No. 22-mc-00064-RJL-RMM, 2024 U.S. Dist. LEXIS 169153, at *13-*18 (D.D.C. Aug. 6, 2024) (citing declarations for analysis of statutory requirements and *Intel* factor, including presence of principal office in the district); *In re Pishevar*, 2023 U.S. Dist. LEXIS 27894, at *8-9 (accord). NeWay has provided no caselaw requiring a party to provide the pleadings in a foreign proceeding as a condition to § 1782 discovery and has never explained why the declaration of foreign counsel is purportedly insufficient, except in that it does not attach a copy of the foreign pleadings.

### III.   <u>NeWay will not be irreparably harmed in the absence of a stay.</u>

NeWay argues that it will be irreparably injured in the absence of a stay because it will be required to disclose confidential documents for a proceeding to

which it is an "innocent" non-party.

### A. Irreparable harm must be established by competent evidence.

NeWay does not present any evidence showing harm, and "simply showing some possibility of irreparable injury—that it may occur—is not enough." *KalshiEx*, 119 F.4th at 65-66 (cleaned up) (noting movant failed to explain "why it lacks such evidence"). Irreparable harm due to the disclosure of confidential business information only constitutes irreparable harm on a showing that "a misappropriator … will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (addressing trade secrets). There is no reason for ordinary business records to receive a greater degree of protection than trade secrets. The mere disclosure of confidential information is not sufficient, on its own, to constitute irreparable harm; caselaw to the contrary was abrogated by the Supreme Court in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 109 (2009) (abrogating *United States v. Philip Morris Inc*., 314 F.3d 612 (D.C. Cir. 2003)). NeWay has submitted no evidence of harm, only speculation. It has made no showing the documents are confidential or explained how their disclosure would harm NeWay. Accordingly, NeWay is not entitled to a stay.

### B. A confidentiality agreement would prevent any potential harm.

Any harm would be mitigated by a confidentiality agreement or protective

order, and BAPA is prepared to agree to one. *In re Accent Delight Int'l*, 791 F. App'x 247, 252 (2d Cir. 2019). This is preferable to a blunt-instrument stay, since "any harm may be ameliorated by imposing protective conditions on the use of the evidence and testimony or requiring the destruction and/or return of the documents." *JSC MCC Eurochem v. Sandeep Chauhan*, No. 18-5890, 2018 U.S. App. LEXIS 26226, at *4 (6th Cir. Sep. 14, 2018).

### C. NeWay's "harms" are so generalized as to apply to any non-party.

The first line of NeWay's brief complains that it is being subjected to "costly" discovery for a case in which it is a non-party. That concern exists in all non-party discovery and almost every § 1782 proceeding. The burden of third-party production is not an irreparable injury. *See In re SPS I Fundo De Investimento De Acoes – Investimento No Exterior*, No. 22-mc-00118(LAK), 2023 U.S. Dist. LEXIS 12230, at *2 (S.D.N.Y. Jan. 24, 2023) (denying stay). If it were, then § 1782 orders would be stayed in every appeal; they are not. *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1274877, at *5 (N.D. Cal. Mar. 17, 2020) (collecting cases and denying motion for stay of discovery pending appeal of grant of § 1782 application). NeWay has not shown an irreparable harm, only speculation about the possibility of a disclosure that it would not like. This failure "is fatal to [NeWay's] stay request." *KalshiEx*, 119 F.4th at 64.

18

**IV.** **A stay is likely to irreparably harm BAPA.**

If a stay issues, BAPA will likely suffer irreparable harm and prejudice in the Foreign Proceeding. The risk that a stay poses to a § 1782 applicant or petitioner, especially with a currently pending foreign proceeding, is well established. The potential termination of a foreign proceeding, or the expiration of an evidentiary submission period, risks mooting the § 1782 application, since the petitioner "may lose altogether any chance to use the materials they seek." *In re Cierco Noguer*, No. 18-MC-498 (JMF), 2019 U.S. Dist. LEXIS 35072, at *15 (S.D.N.Y. Mar. 5, 2019).

BAPA initiated litigation against BAM in Guatemala in September 2022. *See* Ex. Y ("Second Callejas Decl."), ¶ 6. It has relied on evidence obtained in a separate § 1782 proceeding seeking evidence from Broadspan Capital LLC, which was involved in the transactions giving rise to the case (S.D. Fla. Case No. 1:22-cv-20504-BB). *Id*. ¶¶ 7-10. That evidence also showed that NeWay and its affiliated businesses were heavily involved in the Broadspan transactions related to BAPA's claims against BAM. *Id*. ¶ 11. BAPA anticipates that the evidence obtained from NeWay will illuminate the transactions at issue and is likely to reflect benefits between BAM and third parties. *Id*. ¶ 18. That evidence is valuable to BAPA to assess, quantify, and frame its claims. It is of significant value in overcoming certain of BAM's defenses. *Id*. ¶ 19.

19

The Foreign Proceeding has been underway since September 2022, more than three years ago. *Id*. ¶ 12. BAM has submitted defenses to the Court, and the parties are currently awaiting a ruling on those defenses. *Id*. ¶ 13. The parties are permitted to supplement the evidentiary record while the ruling is remaining pending, but once it occurs, *BAPA will lose the procedural opportunity to supplement*. *Id*. ¶¶ 14-16. There is no fixed or statutory deadline for the ruling. It could happen at any time. *Id*. At that point, the opportunity to introduce additional evidence will be closed, seriously affecting BAPA's right to prove its claims. *Id*.

If a stay issues, there is a serious risk that the ruling will issue before BAPA is able to obtain evidence from NeWay. The 12-18 month additional delay previewed by NeWay makes this extremely likely. Ex. W at 7. Losing the ability to use evidence obtained from NeWay risks mooting BAPA's § 1782 proceeding and would also prejudice BAPA's right to prove its claims. Ex. Y at ¶ 17. NeWay's proposal that there is no harm because the case has already proceeded thus far without evidence is nonsensical. BAPA initiated this proceeding in February 2025, nearly one year ago. At that time, the Foreign Proceeding, initiated in September 2022, had been ongoing for approximately 29 months. If NeWay is permitted to delay another 16 months through a stay, the Foreign Proceeding—if it still exists— will have been ongoing for 56 months old, nearly doubling the length from the filing of this Application. Due to the potential length of the stay, BAPA "would

20

almost surely not be able to benefit from the documents or information they have obtained, discovery which the Court has determined is relevant to the . . . foreign proceeding[]." *HRC-Hainan*, 2020 WL 1274877, at *6. Every motion sequence for which the evidence could have been used, but was not, serves to prejudice the applicant. The harm to BAPA will be concrete and substantial.

## V.     <u>The public interest disfavors stays of discovery orders pending appeal.</u>

Courts have consistently found that the public interest does not favor a stay in these types of proceedings. The purposes of § 1782 are "to provide efficient assistance to participants in international litigation and to encourage foreign countries by example to provide similar assistance to our courts." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir 2015) (cleaned up) (quoting *Intel*, 542 U.S. at 259); *see also In re Bracha Found.*, No. 2:15-mc-748-KOB, 2015 U.S. Dist. LEXIS 150863, 2015 WL 6828677, at *4 (N.D. Ala. Nov. 6, 2015) (noting that the public interest in "the truth in foreign actions" weighs against a stay). NeWay's generalized assertions regarding the need for "orderly" resolution are belied by the fact that a stay is a disruption to the usual resolution. The stay must be denied.

## VI.     <u>If the Court imposes a stay, a bond of $7,000,000 is appropriate.</u>

If this Court were to impose a stay, it should set a bond, since a stay risks seriously prejudicing BAPA's rights in the Foreign Proceeding. *See* Fed. R. Civ. P.

21

65(c). BAPA proposes that a bond of $7,000,000, the lower bound of BAPA's claim against BAM (Dkt. 1-2 at ¶ 13), would be appropriate. *Discovery Kifafi v. Hilton Hotels Ret. Plan*, 107 F.Supp.3d 154, 157 (D.D.C. 2015) (Setting bond at amount required to secure judgment). NeWay is a sophisticated business attempting to avoid routine third-party discovery, not an impoverished litigant being bullied.

## CONCLUSION

None of the *Nken* factors support a stay. The stay must be denied; if it is not, a bond should be set that is equal to BAPA's claim against BAM.

Date: January 26, 2026                Respectfully submitted,

/s/ Tara J. Plochocki
SEQUOR LAW, P.A.
Tara J. Plochocki
David A. Short (admission pending)
1200 G Street, N.W.
Suite 340
Washington, DC 20005
Tel: (202) 900-8740
tplochocki@sequorlaw.com

*Counsel for Appellee*

22

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitations of Rules 27(d)(2)(A), 29(a)(5) 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,179 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

January 26, 2026                              /s/ Tara J. Plochocki
                                              Tara J. Plochocki

23

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 26, 2026, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system. I also hereby certify that the participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

Respectfully submitted,

/s/Tara J. Plochocki

24