Oral Argument Subject to Scheduling

**No. 25-7206**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

*In re: Application for Judicial Assistance*
Pursuant to 28 U.S.C. § 1782

**BAPA HOLDINGS, CORP.,**
Appellee,

v.

**NEWAY CAPITAL LLC,**
Appellant.

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:25-mc-00026-AHA (Amir H. Ali, J.)

# APPELLANT'S OPENING BRIEF

Nicholas C. Dranias, Esq.
Nick Dranias Law & Policy Analysis LLC
D.C. Bar No. 456990
3145 E. Chandler Blvd., Ste. 110-645
Phoenix, AZ 85048
Telephone: (602) 228-2528
Email: ndranias@ndlawpolicy.com

*Counsel for Appellant NeWay Capital LLC*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1)(A), Appellant NeWay states the following:

## A. Parties and Amici

The parties to this appeal are:

**Appellant:** NeWay Capital LLC (Respondent below)

**Appellee:** BAPA Holdings, Corp. (Applicant below)

No intervenors or amici have appeared.

## B. Rulings Under Review

This appeal challenges the following rulings of the United States District Court for the District of Columbia (Amir H. Ali, J.):

1. Memorandum Opinion and Order (November 24, 2025), denying NeWay's Motion to Vacate Order Granting Application for Discovery Under 28 U.S.C. § 1782 and to Quash Subpoena (JA-237 through 243).

2. Ex Parte Memorandum Opinion (May 21, 2025), granting BAPA's application for judicial assistance under 28 U.S.C. § 1782 (JA-65 through 67), and the corresponding Order (May 21, 2025) closing the case (JA-68).

**C. Related Cases**

This case has not previously been before this Court, except through filings in the present appeal, D.C. Circuit No. 25-7206. Counsel is not aware of any related cases currently pending in this Court or in any other court.

**D. Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellant NeWay makes the following disclosures: NeWay is a limited liability company. It has no parent corporation, and no publicly held corporation owns 10% or more of its membership interests. NeWay's mission and business purpose is to advance prosperity profitably by promoting, organizing, and developing special economic zones capable of delivering the full stack of best practice governance to a Monaco-sized jurisdictional footprint.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . i
TABLE OF CONTENTS ........ iii
TABLE OF AUTHORITIES ........ vi
GLOSSARY ........ 1
STATEMENT OF JURISDICTION ........ 2
STATEMENT OF THE ISSUES ........ 3
STATUTES AND REGULATIONS ........ 4
STATEMENT OF THE CASE ........ 7
SUMMARY OF ARGUMENT ........ 12
ARGUMENT ........ 15

I. THIS COURT HAS APPELLATE JURISDICTION BECAUSE, IN A CLOSED CASE, THE MAY 21 *EX PARTE* AND NOVEMBER 24 ORDERS ARE FINAL, THE RULE 60(b) DENIAL IS INDEPENDENTLY APPEALABLE, AND, ALTERNATIVELY, MANDAMUS IS WARRANTED. ........ 15

A. The May 21, 2025 Ex Parte Order and November 24, 2025 Order Are Final and Appealable. ........ 16

1. The § 1782 Case Was Closed by the Court and It Has Not Been Reopened. ........ 17

2. NeWay's Jurisdictional Challenge Makes Discovery Scope Irrelevant to Finality as a Practical Matter. ........ 24

3. The § 1782 Order in this Case Should be Regarded as Final for Appellate Purposes Due to the Futility of Scope Litigation... 26

B. The November 24, 2025 Rule 60(b)(4)/(6) Denial Is Independently Appealable. ........ 29

C. Alternatively, Mandamus Under 28 U.S.C. § 1651 Is Warranted. ........ 30

II. THE MAY 21 AND NOVEMBER 24 ORDERS ARE VOID FOR LACK OF PERSONAL JURISDICTION BECAUSE THEY LACK EVIDENTIARY SUPPORT AND THE DISTRICT COURT APPLIED THE WRONG STANDARD. .......... 34

A. Section 1782's "Resides or Is Found" Requirement Cannot be Met Without Personal Jurisdiction. .......... 34

B. Personal Jurisdiction in this Case Requires Proof NeWay is " Essentially At Home" under the Daimler/Hertz "Nerve Center" Test, which the District Court Did Not Find. .......... 35

1. The Ex Parte May 21 Order Issued Without Any Jurisdictional Evidence. .......... 37

2. The November 24 Order Then Applied the Wrong Standard. 38

3. The Original plus Seven More Unrebutted Declarations Establish NeWay Is Not "Essentially At Home" in D.C. and Maintains No "Nerve Center" There. .......... 40

4. No Conceivable Theory of Personal Jurisdiction Can Sustain the District Court's Orders. .......... 44

III. AS APPLIED TO NEWAY, THE *EX PARTE* PROCEEDINGS BELOW VIOLATED THE FIFTH AMENDMENT; AND THE VIOLATION WAS COMPOUNDED—NOT CURED—BY THE DISTRICT COURT'S MISHANDLING OF NEWAY'S MOTION TO VACATE. .......... 47

A. BAPA's $7 Million Bond Demand Establishes That These Proceedings Always Required Full Adversarial Procedures. .......... 47

B. § 1782 Ex Parte Proceedings Are Anomalous in Our Jurisprudence; and Violated First Principles as Applied to NeWay. 48

1. Standard Due Process Analysis Precludes *Ex Parte* Proceedings Where the Stakes Are High. .......... 49

2. The District Court's Mishandling of the Motion to Vacate Compounded the Due Process Violation. ........ 51
CONCLUSION ........ 54
CERTIFICATE OF COMPLIANCE ........ 55
CERTIFICATE OF SERVICE........ 56

# TABLE OF AUTHORITIES

## Cases

*4:20 Communications, Inc. v. Paradigm Co.*, 336 F.3d 775 (8th Cir. 2003) .......... 19

*Alkanani v. Aegis Defense Servs.*, LLC, 976 F. Supp. 2d 13 (D.D.C. 2014) .......... 46

*Anago Franchise, Inc. v. Shaz LLC*, 677 F.3d 1272 (11th Cir. 2012) ..... 19

*Baloch v. Norton*, 517 F. Supp. 2d 345 (D.D.C. 2007) .......... 52, 54

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469 (5th Cir. 2022) .......... 22, 49, 54

*Banca Pueyo SA v. Lone Star Fund IX*, 978 F.3d 968 (5th Cir. 2020) .. 12, 16, 23, 24, 25

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) .......... 26, 30

*BNSF Railway Co. v. Tyrrell*, 581 U.S. 402 (2017) .......... 38, 39, 43

*Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257 (1978) .......... 29

*Cheney v. U.S. District Court*, 542 U.S. 367 (2004) .......... 31

*Cobbledick v. United States*, 309 U.S. 323 (1940) .......... 15, 24

*Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C. Cir. 1987) .......... 30

*Connecticut v. Doehr*, 501 U.S. 1 (1991) .......... 33, 48, 49, 54

*CPC Patent Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126 (9th Cir. 2024) ........................................................................................ 17, 23, 24, 25

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .. 3, 7, 11, 13, 35, 36, 38, 40, 43, 50, 54

*Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021) . 34, 35, 42

*Flynn v. Hovensa, LLC*, No. 3:14-43, 2014 WL 3375238 (W.D. Pa. July 3, 2014) ........................................................................................ 35

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021) ........................................................................................ 45, 47

*Forever Living Products International LLC v. AV Europe GmbH*, No. 05-20-00558-CV, 2021 WL 4465998 (Tex. App.—Dallas July 30, 2021) . 35

*Gelboim v. Bank of America Corp.*, 574 U.S. 405 (2015) ........................ 23

*Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964).................... 15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974) ........................................................................................ 48

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)8, 38, 40, 43

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) .. 3, 7, 11, 13, 35, 36, 37, 38, 39, 40, 43, 50, 52, 54

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559 (2014) 43

*In re Amgen Inc. for Assistance Before A Foreign Tribunal Celltrion USA, Inc.*, 139 F.4th 265 (3rd Cir. 2025) ........................... 17, 23, 24, 25

*In re del Valle Ruiz*, 939 F.3d 520 (2nd Cir. 2019)..........34, 45, 46, 47, 48

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)...........32

*In re Letters Rogatory Issued by Director of Inspection of Gov't of India*, 385 F.2d 1017 (2nd Cir. 1967) ..........................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)...21, 22, 24, 25, 28, 51

*J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. 2025).................................33

*Jovanovich v. Ind. Harbor Belt R.R. Co.*, No. 1-19-2550, 2020 WL 5843957 (Ill. App. Ct. Sept. 30, 2020) ................................................36

*Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401 (7th Cir. 2004) 16

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994)......20, 22

*Koon v. United States*, 518 U.S. 81 (1996)............................................43

*Livnat v. Palestinian Auth.*, 851 F.3d 45 (D.C. Cir. 2017)..........34, 47, 54

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................26, 33, 49, 51, 54

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...26, 33, 49, 51, 54

*North American Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020) ......................................................................................17, 18

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ..........................................43

*Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356 (D.D.C. 2012) .46

*SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458 (5th Cir. 2010) ...........19

*Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995) .......................24

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) .......................... 46

*United States v. Haynes*, 158 F.3d 1327 (D.C. Cir. 1998) ...................... 29

*United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003)........ 32

*United States v. Philip Morris USA Inc.*, 840 F.3d 844 (D.C. Cir. 2016) ........................................................................................................ 30

*United States v. Scurry*, 992 F.3d 1060 (D.C. Cir. 2021) ........................ 44

**Statutes**

28 U.S.C. § 1291.................................................................................. 2, 5

28 U.S.C. § 1651(a) ..................................................................... 2, 6, 12, 31

28 U.S.C. § 1782..... 1, 3, 4, 7, 13, 15, 16, 17, 18, 21, 25, 26, 27, 34, 37, 38, 44, 46, 47, 48, 49, 53

U.S. Const. Fifth Amendment............................................... 4, 47, 49, 54

**Rules**

Fed. Rule App. Proc. 4(a)(4)(A)(vi) ......................................................... 2

Fed. Rule Civil Proc. 60(b)(4)/(6)............... 2, 3, 6, 8, 12, 14, 26, 29, 30, 51

# GLOSSARY

The following abbreviations are used in this brief:

§ 1782—28 U.S.C. § 1782

"BAPA"—BAPA Holdings, Corp. (Appellee/Applicant)

D.C.—District of Columbia

Doc. #—D.C. Circuit docket document number

ECF—Electronic Case Filing (district court docket)

"NeWay"—NeWay Capital LLC (Appellant/Respondent)

All other terms are written in full throughout the brief, consistent with the Court's caution to "limit the use of abbreviations, including acronyms." February 18, 2026 Briefing Schedule Order (JA-389).

# STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 1291. NeWay filed its Notice of Appeal (JA-244 through 245) on December 10, 2025, within thirty days of the district court's November 24, 2025 Memorandum Opinion and Order (JA-237 through 243) denying NeWay's Motion to Vacate under Fed. Rule Civil Proc. 60(b)(4)/(6). The motion to vacate (JA-69 through 78), which was filed within twenty-eight days of the *ex parte* May 21, 2025 order (JA-65 through 68), tolled the time for appealing that order. Fed. Rule App. Proc. 4(a)(4)(A)(vi). Alternatively, NeWay moves this Court to exercise Mandamus jurisdiction under 28 U.S.C. § 1651(a).

# STATEMENT OF THE ISSUES

1. Whether this Court has appellate jurisdiction over § 1782 orders in the absence of a determination on the scope of discovery where the *ex parte* discovery order is final and appealable due to case closure, and where the November 24, 2025 order denying NeWay's Rule 60(b) motion to vacate is itself an independently appealable final order. Alternatively, whether this Court should convert the proceeding to a writ of Mandamus and exercise corresponding jurisdiction.

2. Whether the district court committed reversible error by determining personal jurisdiction under a "holding out" standard rather than the "essentially at home" *Daimler/Hertz* "nerve center" test.

3. Whether the § 1782 proceedings violated the Fifth Amendment's Due Process Clause by bypassing feasible notice, withholding the underlying touchstone pleadings, and by foreclosing NeWay from rebutting BAPA's newly developed jurisdictional case.

The standard of review for each issue is *de novo*.

# STATUTES AND REGULATIONS

The following is reproduced pursuant to Federal Rule of Appellate Procedure 28(f):

**U.S. Constitution, Fifth Amendment**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**28 U.S.C. § 1782(a)**

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter

rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

**28 U.S.C. § 1291**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United

States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court . . .

**28 U.S.C. § 1651(a)**

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**Federal Rule of Civil Procedure 60(b)(4) and (6)**

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; . . . (6) any other reason that justifies relief.

# STATEMENT OF THE CASE

**The Respondent**. NeWay is a Wyoming limited liability company that is not a party to any Guatemalan proceeding. JA-44 (¶36) ("NeWay is not expected to be a party to the Foreign Proceeding."). In other words, NeWay is an innocent American company whose confidential business information a Guatemalan company seeks to conscript for use in a foreign tribunal.

**The *Ex Parte* Application and Order**. In February 2025, BAPA filed an ex parte § 1782 application. JA-13 through 59. The district court ordered BAPA to show cause why it should proceed without notice. Minute Order (Apr. 2, 2025). The sole evidence supporting personal jurisdiction was a declaration by Rodrigo Callejas, a Guatemalan attorney, who reported two conflicting "listed" D.C. addresses for NeWay. JA-34 (¶7). The record contained no analysis under the "essentially at home" *Daimler*/*Hertz* "nerve center" standard, no sworn testimony from anyone with personal knowledge of NeWay's operations, no identification of where NeWay's officers actually direct, control, or coordinate corporate activities, and no showing of any connection between NeWay's contacts with D.C. and the desired discovery. On May 21, 2025, the district court

granted the application relative to a proposed subpoena (JA-65 through 67) and ordered the case closed (JA-68). The case civil docket reflects a corresponding case "terminated" date of "May 23, 2025." JA-1, 2, 256.

**The Authorized Subpoena Was Defectively Served, Lapsed, and Abandoned**. The subpoena authorized by the May 21 order was served defectively—without the required witness fee. JA-241 & 241 n.2. The original subpoena lapsed on its return date. Without first moving to reopen the closed case, BAPA subsequently issued at least one new subpoena with a new return date, new location, and a new mode of compliance. JA-95.

**NeWay's Motion to Vacate**. NeWay appeared within twenty days of the *ex parte* May 21, 2025 order and moved to vacate under Rule 60(b)(4) and (6). JA-69 through 78. The motion challenged personal jurisdiction based on *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). JA-72. From its first filing, NeWay transparently identified Mississippi as its operational base: "To the extent it has a physical operational location, NeWay's physical operational location is best regarded as located in Mississippi, where our Chief of Staff and one of our Board Members (also a Member) reside; and where space is

licensed for annual board meetings to occur." JA-76 (¶3). Through a knowledgeable witness' declaration (NeWay's General Counsel), the motion also thoroughly rebutted the jurisdictional claims made by BAPA in its § 1782 application. *Compare* JA-14 (¶3), 34 (¶7), *with* JA-76, 77 (¶¶4 ("our virtual office location in Washington D.C. only provides centralized mail forwarding services; and it is designated NeWay's 'principal office' for this reason only"), 5 (no "personnel, management, or board members regularly work from or conduct business in Washington, D.C."), 6 ("no records, files, or documents" maintained in D.C.), 7 ("not registered to do business in the District of Columbia")).

**BAPA's Backstop Strategy**. Only after NeWay objected to jurisdiction did BAPA, for the first time, invoke the *Hertz* nerve center standard and deploy seventeen new exhibits—SEC filings, social media profiles, LinkedIn pages, and archived web pages to prove personal jurisdiction existed over NeWay. This theory and proof was entirely absent from the original *ex parte* application. JA-1 through 59, 86, 105 through 192. BAPA held its jurisdictional theory and evidence in reserve (such as it was) and deployed it only after NeWay appeared and moved to vacate.

**NeWay's Seven More Declarations**. In addition to its General Counsel's original declaration (JA-76 through 77), NeWay responded with seven more declarations from its Board of Directors, CEO, Chief of Staff, former COO, former Executive Director, and Operations Manager. JA-199 through 215. The declarations established: NeWay's D.C. address is a $249-per-year virtual mail-forwarding service with no personnel (JA-200 (¶¶6–7)); operations occur primarily from Mississippi (JA-202 (¶ 4)); the CEO resides in Maryland and Honduras, not D.C. (JA-210 (¶2)); and the last person to regularly work from D.C. departed more than four years before BAPA's application (JA-213 (¶2)). Not a single executive, officer, or director of NeWay resides or regularly works in the District of Columbia. JA-76, 77, 199 through 215.

**The District Court's Ruling**. The district court denied NeWay's motion to vacate in all respects. JA-237 through 243. It credited BAPA's late filed seventeen new exhibits while completely disregarding (and not even mentioning) NeWay's responsive declarations. *Compare* JA-199 through 215 *with* JA-237 through 242. It framed the jurisdictional inquiry as whether "BAPA has introduced evidence that NeWay consistently *holds itself out* as a business based in D.C."—not the

"essentially at home" *Daimler/Hertz* "nerve center" test. JA-239 (emphasis added). The district court further underscored the centrality of such "holding out" evidence later in its ruling, rejecting NeWay's testimony that it is a "remote-work company and its physical address in D.C. is used for mail forwarding" with the finding, "this fails to overcome BAPA's far more substantial showing that NeWay *holds itself out* as an organization headquartered in D.C." *Id.* These "holding out" findings were the sole predicate of the district court's stated conclusion "that the record before it shows NeWay 'resides or is found,' and is fairly considered to be "at home," in D.C." *Id.*

**The $7 Million Bond Demand**. BAPA demanded a $7 million bond to stay discovery pending appeal. JA-283. The demand reveals the financial stakes BAPA always knew were involved.

# SUMMARY OF ARGUMENT

**Issue 1 (Statement of Issues ¶1: Jurisdiction).** In response to the February 10, 2026 Order directing the parties to address finality, it is respectfully submitted that this Court has appellate jurisdiction in the absence of a determination on the scope of discovery for three reasons. First, the scope-finality concerns animating *Banca Pueyo I* are factually absent and structurally inapplicable because (a) the *ex parte* May 21, 2025 order is final, as the case was closed by district court order, the authorized subpoena was defective and lapsed, and the case has never been reopened; (b) NeWay's challenge goes to the court's power to act—a binary jurisdictional/due process question—not to the scope of discovery; and (c) scope-finality litigation is futile because the district court has denied access to the touchstone pleadings. Second, the denial of NeWay's Rule 60(b) motion is itself independently final and appealable under settled law. Third, alternatively, if this Court determines that conventional appellate jurisdiction is lacking, mandamus under 28 U.S.C. § 1651 is warranted.

**Issue 2 (Statement of Issues ¶2: Merits): The May 21 and November 24 Orders Are Void for Lack of Personal Jurisdiction.** Section 1782's "resides or is found" requirement is coextensive with constitutional due process limits on personal jurisdiction. Personal jurisdiction requires that NeWay be "essentially at home" in D.C. under the *Daimler/Hertz* "nerve center" test. The *ex parte* May 21 order was completely unsupported by jurisdictional evidence. The November 24 order applied the wrong standard—a "holding out" test rather than an assessment of NeWay's operational reality; and it remained unsupported by jurisdictional evidence. The district court arbitrarily ignored and disregarded seven unrebutted declarations from NeWay's entire corporate leadership establishing that D.C. is not where the corporation's activities are directed, controlled, or coordinated. Specific jurisdiction is unavailable to sustain the proceedings below, as none of NeWay's contacts with D.C. have any connection to BAPA's § 1782 application, and all of them fall under the government contacts exception.

**Issue 3 (Statement of Issues ¶3: Merits): Due Process Was Violated and the Violation Was Compounded in Vacatur Proceedings, Not Cured.** BAPA's $7 million bond demand reveals that these proceedings always involved stakes too high for truncated *ex parte* procedures. Due process requires notice and an opportunity to be heard that scales with the stakes involved. The district court authorized discovery *ex parte* when notice was plainly feasible, permitted the applicant to withhold the touchstone Guatemalan pleadings essential to evaluating relevancy and proportionality of the requested discovery, and, when NeWay objected via Rule 60(b) motion, permitted BAPA to carry its jurisdictional burden for the first time through its opposition brief, while foreclosing NeWay from rebutting BAPA's newly developed theory. This compounded the original due process violation rather than cured it.

# ARGUMENT

## I. THIS COURT HAS APPELLATE JURISDICTION BECAUSE, IN A CLOSED CASE, THE MAY 21 *EX PARTE* AND NOVEMBER 24 ORDERS ARE FINAL, THE RULE 60(b) DENIAL IS INDEPENDENTLY APPEALABLE, AND, ALTERNATIVELY, MANDAMUS IS WARRANTED.

The concept of finality for appealability purposes is a practical question at its root. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152-53 (1964) ("the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other'") (citations omitted); *Cobbledick v. United States*, 309 U.S. 323, 326-30 (1940) (Frankfurter, J.) ("For purposes of appellate procedure, finality . . . is not a technical concept of temporal or physical termination. It is the means for achieving a healthy legal system."). Consequently, the question here is whether, as *a practical matter* in the context of § 1782 proceedings, the May 21, 2025 *ex parte* order and November 24, 2025 order should be regarded as final and appealable in the absence of a determination on the scope of discovery. As discussed below, this question should be answered in the affirmative.

### *A. The May 21, 2025 Ex Parte Order and November 24, 2025 Order Are Final and Appealable.*

Orders granting or denying § 1782 applications have been recognized as final and immediately appealable in the context of the denial of a motion to vacate, as here. *See, e.g.*, *In re Letters Rogatory Issued by Director of Inspection of Gov't of India*, 385 F.2d 1017, 1018 (2nd Cir. 1967) (Friendly, J.) (accepting appellate jurisdiction over appeal after denial of motion to vacate/quash); *see generally Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 403 (7th Cir. 2004) (Easterbrook, J.).

However, an emerging circuit split exists where the scope of permissible discovery remains uncertain. Specifically, the Third, Fifth, and Ninth Circuits have refused to deem a § 1782 order final and appealable as a "practical matter" where a motion to quash remained pending or the scope of discovery was largely unresolved. *Banca Pueyo SA v. Lone Star Fund IX*, 978 F.3d 968, 972–74 (5th Cir. 2020) ("*Banca Pueyo I*") (rejecting appeal while the scope of discovery under a pending motion to quash not fully determined, but observing that once the motion is decided, the order would be final as a "practical" matter); *In re Amgen Inc. for Assistance Before A Foreign Tribunal Celltrion USA, Inc.*, 139

F.4th 265, 268 (3rd Cir. 2025) (rejecting finality due to it "being inefficient to permit appeals from § 1782 orders where the scope of permissible discovery is uncertain"); *CPC Patent Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1135-36 (9th Cir. 2024) (requiring resolution of discovery scope in a general sense to avoid "piecemeal appeals" but underscoring that finality is a "practical concept" and it is not necessary for every specific record to be identified for production).

The developing "scope-finality-exception" has not yet been recognized in the published precedent of this Circuit; and this is not the right case to do so. Instead, NeWay respectfully submits that this Court should hew to the first principle that still unites all of the circuits: that the determination of finality is a matter of practical judgment. As discussed below, practical considerations compel the conclusion that final and appealable orders were entered below.

1. **The § 1782 Case Was Closed by the Court and It Has Not Been Reopened.**

The scope-finality-exception to § 1782 order appealability should be rejected here because the *ex parte* May 21, 2025 order satisfies the finality test recognized in *North American Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253-54 (D.C. Cir. 2020)—the very authority this Court cited

in its *sua sponte* jurisdictional inquiry. This is because the district court expressly ordered the case closed in the same order that granted the § 1782 petition. JA-68. The case civil docket reflects a corresponding case "terminated" date of "May 23, 2025." JA-1, 2, 256.

In a § 1782 context, an order to close the case that results in the case being docketed "terminated" is the functional equivalent of the dismissal without prejudice that was deemed final in *North American Butterfly Ass'n*. This is because, on their face, both orders leave nothing else for the court to do until a future motion is brought. Moreover, because the originally authorized subpoena was defectively served and lapsed after its return date, the district court's ancillary or collateral jurisdiction cannot be stretched to authorize or encompass the issuance of new post-closure subpoenas, which contain new return dates and modes of compliance, without bringing an appropriate motion to reopen the case. JA-95 (describing BAPA's post-closure issuance of a new subpoena with a new return date, new location, and new mode of compliance—a remote deposition); JA-241 & JA-241 n.2 (noting original subpoena was "improperly served").

Once a case is closed and "terminated," the limited nature of federal subject matter jurisdiction leads to the recognition that jurisdiction must be expressly retained for future action in the case; and, as a general rule, a closed case must first be reopened by appropriate motion, for the court to exercise such continuing jurisdiction over the parties. *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 462–64 (5th Cir. 2010) (after a case is effectively terminated, "any action by the district court . . . can have no force or effect"); *see also Anago Franchise, Inc. v. Shaz LLC*, 677 F.3d 1272, 1279–80 (11th Cir. 2012) ("district court did not retain jurisdiction to enforce the Settlement Agreement here because the court issued no such order before the case was dismissed and the stipulation was not conditioned by the entry of an order retaining jurisdiction"); *4:20 Communications, Inc. v. Paradigm Co.*, 336 F.3d 775, 777 (8th Cir. 2003) (observing even where jurisdiction expressly was retained for a limited period of time, subject matter jurisdiction did not encompass enforcement measures post-closure as "no party filed a motion asking the district court to exercise its reserved jurisdiction").

Both *SmallBizPros* and *Anago* applied the Supreme Court's framework from *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375,

381–82 (1994), which holds that post-dismissal judicial actions require either an express retention of jurisdiction or independent jurisdictional grounds. No express retention of jurisdiction exists here; and no implied ancillary jurisdiction extends beyond the specific subpoena that was originally authorized. *Id.* The district court's closure order contained no reservation of authority to entertain future proceedings—it directed the closure of the case, full stop. JA-68.

Closure of a case formalized in a public court order and docket entry stating the case "terminated" should mean what it says. This commonsense interpretation should hold particular weight here, where the electronic docket even includes a potential "reopened" date entry, which is blank in this case. JA-1.

Treating a judicially-closed and docket-terminated case as closed and terminated is also sound practical policy. Case closure is a jurisdictional signal to every stakeholder—the court, the applicant, and the respondent (and the public). A respondent that receives notice of case closure is entitled to rely on that closure in ordering its affairs.

Without a reopening requirement, the applicant could unilaterally reanimate a closed proceeding by issuing new process unseen by the

district court months or years later—effectively wielding the court's coercive authority without fresh judicial authorization. That result is incompatible with the structure of § 1782, which is built on judicial gatekeeping.

A § 1782 proceeding is not a "set it and forget it" process. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–67 (2004), requires district courts to exercise discretion before authorizing discovery for foreign tribunals. Each new subpoena potentially involves different document requests, different return dates, and different compliance terms—all of which implicate the court's discretionary oversight under *Intel* because the circumstances justifying the original weighing of factors may have changed. Self-issuance of a stream of new subpoenas from a closed case bypasses that gatekeeping entirely, converting a prior judicial authorization into an indefinite license to conduct unlimited discovery for foreign litigants.

The § 1782 context makes the case for a reopening requirement stronger, not weaker. Ordinary civil litigation between adverse parties involves participants who chose to invoke or submit to the court's authority. Section 1782 proceedings compel innocent nonparties—

entities with no stake in the underlying foreign dispute—to produce confidential business records under penalty of contempt. If *Kokkonen*'s reopening framework applies to voluntary dismissals in ordinary civil cases, it applies *a fortiori* to court-ordered closures of proceedings that conscript nonparty Americans into producing evidence for foreign tribunals. Permitting *sub rosa* reactivation of such proceedings through new subpoenas—without a docket entry and without fresh judicial authorization—invites the very due process "gamesmanship" the Fifth Circuit warned against in *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475-76 (5th Cir. 2022) ("*Banca Pueyo II*").

Practical considerations confirm the point. Between case closure and any attempted reactivation, circumstances may change: the foreign proceeding may settle, the respondent may relocate, and, most importantly, the original basis for *Intel* discretion may no longer hold. A reopening requirement forces the applicant to demonstrate that the statutory prerequisites remain satisfied at each time the court's coercive power is reinvoked—not merely that they were satisfied months or years earlier. And a reopening motion creates the clean docket entry on which

finality analysis depends, eliminating the jurisdictional ambiguity this Court's *sua sponte* inquiry identified.

Given the presumptively limited nature of federal subject matter jurisdiction, until a closed case is reopened, it just makes practical sense to conclude there is no continuing jurisdiction in the district court to support a new subpoena issuance. And in the absence of a viable subpoena, there is no cognizable dispute over scope.

The procedural posture of this case is thus categorically different from the open proceedings in *Banca Pueyo I*, *CPC Patent*, and *Amgen*, where continuing jurisdiction was uncontested and discovery scope was directly at issue. Though concededly an interesting issue, this briefing itself illustrates the inefficiency resulting from jurisdictional questions that naturally arise when not following the normal case reopening requirement. As a practical matter, at this time and at least until the case is duly reopened by motion, the proceedings below have terminated and are final. *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 409 (2015) ("A 'final decision' is one 'by which a district court disassociates itself from a case'") (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995)); *Cobbledick*, 309 U.S. at 326.

**2. NeWay's Jurisdictional Challenge Makes Discovery Scope Irrelevant to Finality as a Practical Matter.**

The scope-finality-exception should also be rejected here because, unlike the Respondent's case in *Banca Pueyo I*, NeWay's challenge goes to personal jurisdiction and due process—a binary question of the court's power to act—not to the scope of discovery. The entire analytical framework of the scope-finality-exception collapses when the appellant challenges the court's power and authority over the respondent rather than its exercise of discretion over the scope of discovery.

The scope-finality holdings in *Banca Pueyo I*, and other cases outside of this Circuit, rest on a specific premise: the appellate court usually cannot evaluate the district court's exercise of *Intel* discretion without knowing what discovery was ordered. *Banca Pueyo I*, 978 F.3d at 973. For example, *Amgen* states that defining scope is a prerequisite to appellate review of the *Intel* factors. 139 F.4th at 268. Likewise, *CPC Patent Techs. Pty Ltd.*, 119 F.4th at 1133-34, emphasized that the practical case for denying appellate finality to a § 1782 order while discovery scope issues are unresolved arises from the recognition that finalizing scope "is no mere academic issue, but one that materially affects our ability to evaluate the *Intel* factors." But this premise of the

"practical" nature of the scope-finality-exception is inapplicable to jurisdictional challenges.

If the district court lacks power over the respondent, the *Intel* analysis should be irrelevant. Without personal jurisdiction over the respondent, the *Intel* factors should never come into play. Thus, if the primary "practical" justification for holding back appellate jurisdiction is to enable review under *Intel*, as per *Banca Pueyo I*, *CPC Patent Techs. Pty Ltd.*, and *Amgen*, then there is no practical reason to apply the scope-finality-exception to preclude jurisdictional appeals from jurisdictionally-void § 1782 orders.

Additionally, extending the scope-finality-exception to jurisdictional challenges creates an unjust and inequitable Catch-22 that infringes on the requirements of due process. A jurisdictional objector's entire position is that the court has no power to order discovery at all. Requiring participation in scope proceedings before appealing forces the respondent to submit to the very authority it contests. The *ex parte* origin of these proceedings constitutionalizes the problem.

After all, due process ordinarily requires an opportunity to be heard before the deprivation (when reasonably feasible), not an obligation to

submit first and challenge later. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, the court asserted jurisdiction *ex parte*, without notice and without any opportunity for NeWay to be heard—despite the same being quite feasible. Conditioning NeWay's right to challenge that jurisdictional assertion on submission to the very authority it contests without prior notice and an opportunity to be heard inverts the constitutional order.

For all of the foregoing reasons, this Court, writing on a clean slate regarding the scope-finality-exception, should hold that the exception does not apply to deny the finality of § 1782 orders that are subject to jurisdictional challenge. Such a holding would be consistent with the independent appealability of Rule 60(b) motion denials *vis-à-vis* void orders (discussed below). *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013) ("if the judgment is void, relief is mandatory").

### 3. The § 1782 Order in this Case Should be Regarded as Final for Appellate Purposes Due to the Futility of Scope Litigation.

Lastly, the scope-finality-exception should be rejected here because scope proceedings would be futile even if the case were reopened. The exception assumes that scope can be resolved through ordinary adversarial proceedings—that the parties will negotiate document categories, assert proportionality objections, and refine the contours of production. But to truly substantially resolve all scope issues, that assumption depends on both parties having access to the touchstone those proceedings require.

Here, however, BAPA has withheld the Guatemalan pleadings from the district court, from NeWay, and from this Court—and continues to withhold them. JA-13 through 59 (no pleadings attached to original application); JA-79 through 192 (seventeen new exhibits, still no pleadings); JA-286 through 288 (second Callejas Declaration, still no pleadings). The district court sustained the withholding of the Guatemalan pleadings, accepting BAPA's position that § 1782 does not require production of foreign pleadings; and characterized NeWay's contention that the *Intel* factors "cannot be assessed without a copy of the foreign pleading" as somehow merely "conclusory." JA-266.

But without the underlying foreign pleadings, every dimension of scope analysis under *Intel* collapses. Relevance cannot be meaningfully assessed because neither the district court nor NeWay can actually know what claims are at issue in Guatemala (certainly BAPA's Guatemalan attorney is not an unbiased source). Proportionality cannot be evaluated because the magnitude of the foreign dispute—to which discovery must be proportional—is unknown. The circumvention factor under *Intel*, 542 U.S. at 264–65, cannot be analyzed because circumvention requires comparing the discovery sought here against what the foreign tribunal's own procedures would permit. That is an impossible comparison without knowing what the foreign tribunal is being asked to decide. And burden cannot be weighed against need when the need is defined by pleadings that remain hidden.

If the scope-finality-exception exists to ensure that appellate review proceeds on a complete record, applying it where the district court has already ruled the record <u>cannot be completed</u> defeats the rule's own purpose. Requiring NeWay to litigate scope under these conditions would condition appellate jurisdiction on an exercise in futility.

There is no Circuit or Supreme Court precedent commanding such an impractical acceptance of the scope-finality-exception. The practical considerations that underpin the appellate concept of finality warrant a futility exception here. More specifically, this Court should affirm the appellate finality of § 1782 orders where, as here, scope litigation is futile due to the district court's denial of access to the pleadings touchstone for such litigation—a ruling only this Court can correct. JA-266, 267.

### *B. The November 24, 2025 Rule 60(b)(4)/(6) Denial Is Independently Appealable.*

Wholly apart from debates over the scope-finality-exception, the denial of a Rule 60(b) motion seeking to vacate a void order in violation of due process is an independently appealable final order under settled law. *Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 263 n.7 (1978) ("A timely appeal may be taken under Fed. Rule App. Proc. 4(a) from a ruling on a Rule 60(b) motion"); *United States v. Haynes*, 158 F.3d 1327, 1330 (D.C. Cir. 1998) (stating denial of Rule 60(b) motion is "an appealable event").

NeWay's motion challenged the district court's *ex parte* May 21, 2025 order on personal jurisdiction and due process grounds. That challenge invoked Rule 60(b)(4)/(6), which authorizes relief from a

judgment that "is void." JA-69 through 78. Lack of personal jurisdiction and violations of due process are paradigmatic bases for voidness in this Circuit. *See, e.g.*, *Combs v. Nick Garin Trucking*, 825 F.2d 437, 439, 442-43 (D.C. Cir. 1987); *see generally United States v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016) (observing Supreme Court has ruled the relevant voidness includes "defects in personal jurisdiction, subject matter jurisdiction, and due process").

The clear merits of NeWay's jurisdictional voidness and due process inquiry—addressed in Sections II and III below—establish that both categories are satisfied here. Moreover, because NeWay's motion challenged the *ex parte* May 21, 2025 order on personal jurisdiction and due process grounds under Rule 60(b)(4)/(6), the denial is reviewable *de novo*. *Bell Helicopter Textron, Inc.*, 734 F.3d at 1179 ("there is no question of discretion on the part of the court when a motion is under Rule 60(b)(4); if the judgment is void, relief is mandatory") (quoting *Combs*, 825 F.2d at 441). The Court may affirm or reverse on the merits of this challenge, but its jurisdiction is established by the independent finality of the vacatur denial itself.

### *C. Alternatively, Mandamus Under 28 U.S.C. § 1651 Is Warranted.*

If this Court nevertheless determines that conventional appellate jurisdiction is lacking, NeWay respectfully moves this Court to deem the pending filings converted to a petition for writ of mandamus under 28 U.S.C. § 1651 and Fed. Rule App. Proc. 21. Under *Cheney v. U.S. District Court*, 542 U.S. 367, 380–81 (2004), mandamus is appropriate where (1) no other adequate means to attain relief exists, (2) the right to issuance is clear and indisputable, and (3) the writ is appropriate under the circumstances.

**No other adequate means exist.** *Cheney*'s first factor is expressly designed to bar use of mandamus where ordinary appeal or stay suffices. 542 U.S. at 380. Here, neither suffices. The district court denied NeWay's motion for stay. JA-310. This Court denied the renewed motion for stay. JA-387. The briefing schedule defers any merits decision until after June 10, 2026—likely long after irreversible disclosure will have occurred. If NeWay is compelled to disclose confidential business information before this Court reaches the merits, no subsequent reversal can restore confidentiality. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760-64 (D.C. Cir. 2014) (granting mandamus to vacate discovery order threatening irreversible loss of confidentiality).

**The right to relief is clear and indisputable.** The legal errors detailed in Sections II and III below are not close calls. They are clear departures from governing Supreme Court precedent: (1) the application of a "holding out" standard this Court has rejected, and no circuit has adopted since *Daimler*/*Hertz*; (2) the denial of due process in *ex parte* proceedings where notice was feasible and the stakes were high; and (3) the asymmetric exclusion of rebuttal evidence. *In re Kellogg Brown & Root*, 756 F.3d at 762 (the "clear and indisputable" standard requires that the legal error be "clear").

**The writ is appropriate.** Once NeWay's confidential business records are disclosed to foreign litigants, confidentiality cannot be restored. *United States v. Philip Morris Inc.*, 314 F.3d 612, 621–22 (D.C. Cir. 2003). The $7 million bond demand underscores the point: a proceeding generating $7 million exposure for an innocent nonparty to the underlying proceedings is not the routine discovery dispute for which mandamus restraint is designed.

**This Court's recent practice authorizes conversion.** In *J.G.G. v. Trump*, 147 F.4th 1044, 1045 (D.C. Cir. 2025) (Katsas, J., concurring; Rao, J., concurring; Pillard, J., dissenting), this Court dismissed the

appeal for lack of interlocutory jurisdiction and granted mandamus on the same record. Though the dissent had an understandable concern about the absence of a unified rationale, *see id.* at 1074 (Pillard, J., dissenting), this case presents no such difficulty. The legal errors here involve the straightforward misapplication of Supreme Court precedent—*Daimler*'s "essentially at home" standard in light of *Hertz*'s nerve center test, and *Doehr*/*Mathews*/*Mullane*'s due process requirements. The "clear and indisputable" requirement is satisfied by settled governing law. Fed. Rule App. Proc. 2 and Circuit Rule 21 thus authorize conversion in the interests of justice to maintain the requested relief.

## II. THE MAY 21 AND NOVEMBER 24 ORDERS ARE VOID FOR LACK OF PERSONAL JURISDICTION BECAUSE THEY LACK EVIDENTIARY SUPPORT AND THE DISTRICT COURT APPLIED THE WRONG STANDARD.

This Court reviews personal jurisdiction determinations *de novo*. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017). As discussed below, no plausible argument sustains the district court's exertion of personal jurisdiction over NeWay. A $249-per-year virtual mail-forwarding service based in D.C. is neither a home nor a nerve center. JA-199, 200.

### ***A. Section 1782's "Resides or Is Found" Requirement Cannot be Met Without Personal Jurisdiction.***

Section 1782(a) authorizes discovery in "the district in which a person resides or is found." The Second Circuit held in *In re del Valle Ruiz*, 939 F.3d 520, 528–30 (2nd Cir. 2019), that this language is coextensive with constitutional due process limits on personal jurisdiction. Although the published precedent of this Circuit appears silent on the question, other courts and commentators have suggested that "resides or is found" may impose requirements *even more demanding* than personal jurisdiction. But for purposes of this appeal, NeWay is

content to focus on the district court's and BAPA's failure to establish personal jurisdiction.

### *B. Personal Jurisdiction in this Case Requires Proof NeWay is "Essentially At Home" under the Daimler/Hertz "Nerve Center" Test, which the District Court Did Not Find.*

General personal jurisdiction exists only where a corporation's affiliations with the jurisdiction "are so continuous and systematic" as to render it "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 127, 138 (2014). This Court followed *Daimler* in *Erwin-Simpson*, overruling its prior "doing business" theory and adopting the *Daimler* "at home" standard. *Erwin-Simpson*, 985 F.3d at 888, 890–93. *Daimler* itself directly cited *Hertz* to define where a corporation is "essentially at home" for general jurisdiction purposes. 571 U.S. at 137. Because of its adoption in *Daimler*, *Hertz* is well-recognized as furnishing principles for ascertaining general jurisdiction despite its origin in diversity jurisdiction litigation. *See, e.g., Forever Living Products International LLC v. AV Europe GmbH*, No. 05-20-00558-CV, 2021 WL 4465998, at *5 (Tex. App.—Dallas July 30, 2021) (citing *Flynn v. Hovensa, LLC*, No. 3:14-43, 2014 WL 3375238, at *2 (W.D. Pa. July 3, 2014); *Jovanovich v. Ind. Harbor Belt R.R. Co.*, No. 1-19-2550, 2020 WL 5843957, at *6–7 (Ill.

App. Ct. Sept. 30, 2020) (all applying *Hertz* nerve-center test to *Daimler* general jurisdiction)).

Indeed, BAPA itself first invoked the *Hertz* nerve center framework as deciding the issue in its opposition to NeWay's motion to vacate, arguing that "[a] corporation's principal place of business is its 'nerve center'" and citing *Hertz Corp. v. Friend* for the proposition. JA-86. This is the new theory that NeWay rebutted through its seven additional management declarations. JA-199 through 215. Yet the district court departed from the *Hertz* framework, disregarded NeWay's rebuttal evidence, and instead rested its analysis on "holding out" evidence—a standard no court has adopted for personal jurisdiction.

The "essentially at home" *Daimler* standard thus warrants application of the *Hertz* nerve center test here: "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 88, 92–93 (2010). And *Hertz* was emphatic about what courts may not treat as dispositive. The Court "reject[ed] suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive

offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" 559 U.S. at 96–97 (citations omitted). The Court further warned that when evidence reveals "that the alleged 'nerve center' is nothing more than a mail drop box," courts must look to "the place of actual direction, control, and coordination." *Id.* at 95-97.

### 1. The Ex Parte May 21 Order Issued Without Any Jurisdictional Evidence.

When the district court entered the *ex parte* May 21 order, the only purported jurisdictional evidence before it was a Guatemalan attorney's declaration reporting two conflicting D.C. addresses as "listed" for NeWay. JA-34 (¶7). It is critically important to underscore the Guatemalan attorney's testimony was only as to "listed" addresses. This is only "holding out" evidence. No testimony was offered as to any underlying operational reality for NeWay. Moreover, the source of the first "listing" was not identified; the source of the second "listing" was identified simply as NeWay's "website," without providing any foundation for judicial notice. BAPA offered no sworn testimony from anyone claiming personal knowledge of NeWay's actual operations.

This unsourced testimony about "listings" from a Guatemalan attorney was the <u>sole source</u> of the representation made in BAPA's § 1782

application to the district court that "Neway 'resides or is found in' the District of Columbia" and "Neway's presence in this District may be categorized as systematic and continuous." JA-25, 26.

Consequently, the *ex parte* May 21, 2025 order relied entirely on foundationless "listing" evidence to support its assertion of personal jurisdiction over NeWay. Put another way, the *ex parte* order was patently unsupported by any *operational* evidence that could establish personal jurisdiction over NeWay under *Daimler AG*, 571 U.S. at 137 (citing *Hertz*, 559 U.S. at 94), *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 410–13 (2017), or *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

**2. The November 24 Order Then Applied the Wrong Standard.**

After issuing its *ex parte* May 21 Order without any supporting jurisdictional evidence, the district court later purported to invoke the "resides or is found" jurisdictional standard of § 1782 in its November 24 Order denying NeWay's motion to vacate. JA-238, 239. But it did so while expressly and repeatedly characterizing the substance of its jurisdictional inquiry as "BAPA has introduced evidence that NeWay consistently *holds itself out* as a business based in D.C" and while

underscoring "BAPA's far more substantial showing that NeWay *holds itself out* as an organization headquartered in D.C." JA-239 (emphasis added). Thus, just as the May 21 Order relied entirely on foundationless address "listings," rather than operational evidence, the November 24 Order also grounded its jurisdictional analysis entirely in "holding out" evidence.

Indeed, every item of evidence the district court credited belongs exclusively to the type *Hertz* held insufficient "without more": website listings displaying a D.C. address, social media profiles identifying D.C. as headquarters, and SEC filings listing D.C. as the principal place of business. JA-238, 239. These are precisely the nominal filings and forms of proof that *Hertz* cautioned cannot alone establish a nerve center. 559 U.S. at 95–97.

Moreover, the "holding out" evidence relied upon by the district court as establishing personal jurisdiction over NeWay does not even come close to proving the far more extensive corporate activities the Supreme Court has repeatedly rejected as grounds for personal jurisdiction in *BNSF Railway Co.*, 581 U.S. at 410–13 (denied general jurisdiction in Montana despite BNSF's extensive in-state operations

(2,000+ miles of track, 2,000+ employees)), and *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16 (holding regular purchases, CEO contract negotiations, and personnel training sessions directed to a particular jurisdiction were insufficient for general jurisdiction). *Compare* JA-238, 239.

But neither this Circuit nor any other federal court applies a "holding out" standard to determine personal jurisdiction. By substituting a "holding out" test for the "essentially at home" *Daimler/Hertz* "nerve center" test, the district court conflated marketing presence and nominal regulatory filings with operational control, directly contravening the Supreme Court's mandate. Thus, neither the May 21 nor November 24, 2025 order furnish any legal basis for personal jurisdiction over NeWay.

**3. The Original plus Seven More Unrebutted Declarations Establish NeWay Is Not "Essentially At Home" in D.C. and Maintains No "Nerve Center" There.**

The district court's clear legal error warrants reversal because the "something more" required by the applicable legal standard is evidence of actual operational direction and control—evidence NeWay's eight declarations provided, and the district court arbitrarily declined to credit.

NeWay's eight declarations (the original declaration supporting its motion to vacate plus the seven additional reply declarations offered to rebut BAPA's late opposition case) are from the management personnel who are most knowledgeable about its operations—its Board members, CEO, Chief of Staff, General Counsel, former Executive Director, former COO, and Operations Manager. JA-76, 77, 199 through 215. They affirmatively establish that D.C. is <u>not</u> its nerve center, much less essentially its home.

The D.C. address is a $249-per-year virtual mail-forwarding service—no personnel work there and no corporate activities are conducted there. JA-200 (¶¶6–7). Operations occur primarily from Mississippi. JA-202 (¶4). The CEO resides in Maryland and Honduras. JA-210 (¶2). The last person to regularly work from D.C. departed more than four years before BAPA's application. JA-213 (¶2). Not a single executive, officer, or director of NeWay resides or regularly works in the District of Columbia.

As NeWay's management transparently explained in their declarations, the company's D.C. virtual office address was designated its principal office in corporate filings to maintain a stable location for an

otherwise remotely operated company, which is dispersed around the country and the world. JA-76, 77, 199 through 211, 215. The website relied upon by BAPA and the district court as jurisdictional evidence (contrary to *Erwin-Simpson*, 985 F.3d at 888, 890–93) was not accurate and simply had not been updated for many years. JA-199 (¶¶2-3).

Nevertheless, the district court later dismissed NeWay's declarations as "conclusory" for using legally precise language tracking the applicable "nerve center" legal standard. JA-238, 239. But how else would NeWay prove the negative required? To ask the question is to answer it. NeWay should not have been held to prove a negative with even greater specificity.

NeWay has not maintained a secret command and control headquarters for Honduran-Guatemalan transactions out of a $249/year D.C. virtual office. NeWay's historical footprint in D.C., even if BAPA's filings were fully credited, barely registers in comparison to the evidence of extensive contacts, operations, and infrastructure that has been repeatedly rejected by the Supreme Court as insufficient for personal jurisdiction in *BNSF Railway Co.*, 581 U.S. at 410–13, and *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414–16.

In substance, the district court penalized NeWay for providing the exact evidence the Supreme Court said courts should examine. More fundamentally, the district court erred because the burden of proof has always rested with BAPA as the *ex parte* applicant. BAPA never carried that burden of proof. Its "proof" consists solely of contradictory conclusory "listings" testimony from a Guatemalan attorney (JA-34 (¶7)) and similar "holding out" evidence offered for the first time in opposition to NeWay's motion to vacate. This proof is immaterial under the governing legal standard—because, under *Daimler*'s embrace of *Hertz*, a "mail drop box," website, or corporate filing is precisely what courts must look beyond. 559 U.S. at 97. Relying exclusively on such evidence applies the wrong legal standard.

When a district court applies the wrong legal standard, reversal is required. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014); *Koon v. United States*, 518 U.S. 81, 100 (1996); *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 95 (1943) ("[I]f the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."); *United States v. Scurry*, 992 F.3d 1060, 1070

(D.C. Cir. 2021). The void § 1782 orders entered by the district court should be reversed because personal jurisdiction in D.C. over NeWay never existed, cannot exist, and the district court applied the wrong legal standard in ruling otherwise.

**4. No Conceivable Theory of Personal Jurisdiction Can Sustain the District Court's Orders.**

General jurisdiction is the focus of this brief (and NeWay's motion to vacate below) because BAPA's § 1782 application alleged only a general jurisdiction theory based entirely on a conclusory report of contradictory address listings by a Guatemalan attorney (*compare* JA-25, 26 *with* JA-34 (¶7)), the district court's May 21 order adopted this "listing" evidence as the sole basis of finding jurisdiction (JA-65), thus implicitly deferring to BAPA's general jurisdiction theory; and the November 24 order mentions specific jurisdiction only in passing without clearly invoking it; instead, focusing entirely on the previously discussed "holding out" evidence (JA-237 through 239). But even if specific jurisdiction had been invoked at any material juncture below, that theory would have failed as a matter of law.

Traditional specific jurisdiction requires an "affiliation between the forum and the underlying controversy"— the respondent's forum contacts

must "give rise to or be related to" the claims at issue. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358–59 (2021). The "underlying controversy" here is Guatemalan litigation between BAPA and Banco Agromercantil de Guatemala concerning events in Honduras and Guatemala. Nothing in the record suggests that NeWay's contacts with the District of Columbia give rise to or are related to that controversy. To the contrary, NeWay's original and seven additional declarations stand against such a notion. JA-76, 77, 199 through 215. None of the initial "listings" evidence nor late-produced "holding out" evidence supports a contrary inference. Hence, specific jurisdiction is unavailable here under Supreme Court precedent. The Court should so hold.

Nor does the modified specific jurisdiction test developed in the Second Circuit for § 1782 respondents yield a different result. *See In re del Valle Ruiz*, 939 F.3d at 529. There, the court held that specific jurisdiction exists only where "the discovery material sought proximately resulted from the respondent's forum contacts." *Id.* The business records BAPA seeks allegedly concern only NeWay's operations in or directed to Honduras and Guatemala, not D.C. JA-13 through 59. NeWay's D.C.

contacts—a $249/year virtual office and intermittent lobbying support—are obviously not "the primary or proximate reason that the evidence sought is available at all." *Compare In re del Valle Ruiz*, 939 F.3d at 529, *with* JA-199, 200 (¶¶6–7), 202 (¶4). The sought-after documents exist, if at all, because of what NeWay does in Central America, not because of anything it does in D.C.

Finally, NeWay's intermittent lobbying activities in D.C. are jurisdictionally irrelevant. The government contacts exception precludes basing personal jurisdiction on petitioning activities directed at the government, lest the District of Columbia be converted "into a national judicial forum." *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (citations omitted); *Alkanani v. Aegis Defense Servs.*, LLC, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (citing *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 362 (D.D.C. 2012) (collecting cases)).

Although this doctrine arose to deny personal jurisdiction based on D.C.'s long arm statute, it logically applies to jurisdiction under § 1782, which is no more indicative of an intention by Congress to transform the District of Columbia into an (inter)national *discovery* forum. Once those contacts are excluded, no cognizable forum contact remains to sustain

jurisdiction against NeWay under any possible theory. JA-76, 77, 199 through 215. Hence, neither the traditional *Ford Motor* framework nor the § 1782-specific *In re del Valle Ruiz* test provides any alternative basis for the district court's assertion of personal jurisdiction over NeWay. Replacing the district court's "holding out" test with specific jurisdiction goes nowhere.

## III. AS APPLIED TO NEWAY, THE *EX PARTE* PROCEEDINGS BELOW VIOLATED THE FIFTH AMENDMENT; AND THE VIOLATION WAS COMPOUNDED—NOT CURED—BY THE DISTRICT COURT'S MISHANDLING OF NEWAY'S MOTION TO VACATE.

This Court reviews *de novo* constitutional questions of due process under the Fifth Amendment. *Livnat*, 851 F.3d at 48.

### *A. BAPA's $7 Million Bond Demand Establishes That These Proceedings Always Required Full Adversarial Procedures.*

BAPA demanded a $7 million bond to stay discovery pending appeal. JA-283. BAPA cannot have it both ways: claiming the stakes in § 1782 proceedings are minimal enough to justify ex parte procedures even when notice is feasible, and then demanding a $7 million bond claiming the stakes are existential. A $7 million bond demand is the strongest

possible evidence that the stakes were always high—too high for the truncated procedures employed here.

Under *Connecticut v. Doehr*, 501 U.S. 1, 10–14 (1991), due process requirements scale with the stakes involved. When the stakes are high, procedural protections must be elevated—not diminished. BAPA cannot simultaneously demand $7 million from an innocent nonparty and insist that the *ex parte* procedures that produced the underlying order were constitutionally adequate. There is no § 1782 exception to the normal rules of due process. *In re del Valle Ruiz*, 939 F.3d at 530.

### ***B. § 1782 Ex Parte Proceedings Are Anomalous in Our Jurisprudence; and Violated First Principles as Applied to NeWay.***

"Our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974). Due process requires notice "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The *ex parte* proceedings routinely tolerated in the § 1782 context are anomalous. But what specialized practitioners call "standard practice" cannot answer the question that matters: as applied to NeWay, did the procedure satisfy the Fifth Amendment? Constitutional mandates constrain customary practice, not *vice versa*. *Banca Pueyo II*, 55 F.4th at 475. As discussed below, and as applied to NeWay, the district court's *ex parte* proceedings violated due process and were never cured.

### 1. Standard Due Process Analysis Precludes *Ex Parte* Proceedings Where the Stakes Are High.

*Doehr*, 501 U.S. at 10–14, applies the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), three-factor framework. As applied here, each factor favors NeWay's claim that the district court's ex parte proceedings violated its Fifth Amendment due process guarantees.

**First: the private interest affected.** NeWay—an innocent nonparty with no stake in the Guatemalan proceeding—faces compelled disclosure of confidential business records and, according to BAPA's bond arguments, somehow $7 million in liability exposure for noncompliance. These are substantial private interests by any measure.

**Second: the risk of erroneous deprivation and the probable value of additional safeguards.** The risk of error certainly

materialized. In the absence of the crucible of adversarial testing, BAPA was able to convince the district court to exert personal jurisdiction over NeWay in its initial May 21, 2025 order with no evidentiary backing, and to adopt an erroneous "holding out" standard for personal jurisdiction after NeWay objected. Full adversarial procedures at the outset would have subjected BAPA's jurisdictional theory to the scrutiny *Daimler*/*Hertz* requires.

**Third: the opposing party's interest.** BAPA filed its Guatemalan lawsuit in September 2022 and waited twenty-nine months before seeking discovery from NeWay. Nearly nine months ago, BAPA's § 1782 application could have been refiled in Mississippi where personal jurisdiction over NeWay is uncontested. BAPA's own declarant has conceded there is "no fixed or statutory deadline" for the Guatemalan proceedings. JA-288 (¶15). Whatever interest BAPA has in obtaining discovery, that interest did not justify bypassing notice to NeWay when BAPA's own timeline negates any claim of urgency.

**BAPA bypassed feasible notice for tactical advantage.** BAPA's demonstrated online forensic capability—tracking social media, archiving web pages, compiling SEC filings, assembling seventeen

exhibits—proves notice to NeWay was always feasible. Yet BAPA never sent a single email or placed a single call before seeking *ex parte* relief. JA-200 (¶¶8-9). When a party demonstrates greater diligence investigating social media to oppose a Rule 60(b) motion than when attempting actual notice to secure the underlying judgment, the deliberate bypass violates *Mullane*'s and *Mathews*' foundational notice requirement. BAPA also withheld the Guatemalan pleadings essential to evaluating the *Intel* factors—denying NeWay the foundational information needed to assess relevance, proportionality, and circumvention. To this day, BAPA refuses to share them. This is a continuing denial of meaningful notice and an opportunity to be heard on the touchstone issues of the case (so much so that it renders litigation over the scope of discovery futile, as previously argued).

**2. The District Court's Mishandling of the Motion to Vacate Compounded the Due Process Violation.**

NeWay's Rule 60(b) motion to vacate should have been the corrective mechanism. Instead, it consummated the denial of due process. The district court permitted BAPA to carry its jurisdictional burden <u>through its opposition briefing</u>—wherein BAPA deployed seventeen new exhibits and asserted the *Hertz* nerve center framework for the first time.

*See* JA-86 (BAPA arguing, "A corporation's principal place of business is its "nerve center," which focuses on the location from which a corporation's operational, administrative, and executive functions are directed . . . (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)"). And then the district court foreclosed NeWay from rebutting BAPA's newly developed case by completely disregarding NeWay's seven additional reply declarations. *Compare* JA-237 through 242 *with* JA-199 through 215.

As a matter of due process—to ensure NeWay had a meaningful opportunity to be heard in contesting the *ex parte* May 21, 2025 order—the district court should have applied the well-established rebuttal rule of *Baloch v. Norton*, 517 F. Supp. 2d 345, 349 n.2 (D.D.C. 2007) (holding that reply evidence responding to issues "first raised by the plaintiff in his opposition" is permissible). Instead, the district court essentially excused BAPA from carrying its jurisdictional burden of proof in its original *ex parte* application, permitted BAPA to carry that burden for the first time in opposition to NeWay's motion to vacate, and then foreclosed NeWay from rebutting BAPA's newly developed case.

The district court's due process errors are manifest. NeWay has never had a meaningful opportunity to be heard on the jurisdictional issues that determine this appeal. At the inception of the proceedings below, BAPA could have given notice to NeWay but, with the district court's approval, instead chose *ex parte* procedures. NeWay was thus denied an opportunity to point out the complete absence of jurisdictional evidence before the *ex parte* May 21, 2025 order was issued. NeWay could have been given the opportunity to rebut BAPA's subsequently developed jurisdictional case, but the district court instead silenced NeWay by disregarding its rebuttal evidence. JA-237 through 242. BAPA could have shared the touchstone pleadings essential to the *Intel* factor analysis and ascertaining the proper scope of its discovery but, with the district court's approval, those pleadings remain secret. JA-239, 240.

At each stage of the litigation below, the district court has systematically sheltered BAPA from the "crucible of adversarial testing" that due process requires. Whatever the usual merits of *ex parte* § 1782 proceedings, as applied here, NeWay's right to due process under *Doehr*/*Mathews*/*Mullane* has been denied. Reviewed *de novo*, reversal is

the appropriate remedy to vindicate the Fifth Amendment. *See Livnat*, 851 F.3d at 48; *see also Banca Pueyo II*, 55 F.4th at 477–78.

## CONCLUSION

For the foregoing reasons, this Court should:

**1. Reverse** the district court's May 21, 2025 and November 24, 2025 orders relative to authorizing discovery (JA-65 through 68, 237 through 243) and **remand** with instructions, if and to the extent the case is reopened, to (a) apply the "essentially at home" *Daimler*/*Hertz* "nerve center" test to determine whether NeWay is subject to personal jurisdiction in the District of Columbia, (b) consider all admissible evidence, including NeWay's seven reply declarations (JA-199 through 215), and (c) conduct any further proceedings in compliance with the Fifth Amendment's guarantee of due process, including full adversarial procedures, such as the rebuttal evidentiary framework established by *Baloch v. Norton*.

**2. Alternatively, grant a writ of mandamus** under 28 U.S.C. § 1651, directing the district court to vacate its May 21, 2025 and November 24, 2025 orders and, if and to the extent the case is reopened, to conduct any further proceedings as aforesaid.

*Respectfully submitted,*

/s/Nicholas C. Dranias, Esq.
Nick Dranias Law & Policy Analysis LLC
D.C. Bar No. 456990
3145 E. Chandler Blvd., Ste. 110-645
Phoenix, AZ 85048
Telephone: (602) 228-2528
Email: ndranias@ndlawpolicy.com

*Counsel for Appellant NeWay Capital LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,394 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: March 13, 2026

/s/Nicholas C. Dranias, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I electronically filed the foregoing Appellant's Opening Brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Nicholas C. Dranias, Esq.
Nick Dranias Law & Policy Analysis LLC
D.C. Bar No. 456990
3145 E. Chandler Blvd., Ste. 110-645
Phoenix, AZ 85048
Telephone: (602) 228-2528
Email: ndranias@ndlawpolicy.com

*Counsel for Appellant NeWay Capital LLC*